Ralph J. DELLACAVA,
Plaintiff–Appellant,

v.

PAINTERS PENSION FUND OF WEST-
CHESTER AND PUTNAM
COUNTIES, Defendant–Appellee.

No. 826, Docket 87–7978.

United States Court of Appeals,
Second Circuit.

Argued March 3, 1988.

Decided June 10, 1988.

Donald L. Sapir, White Plains, N.Y. (Silverman & Sapir, White Plains, N.Y., of counsel), for plaintiff-appellant.

Damien E. Mysak, New York City (Levin & Weissman, Roger M. Levin, New York City, of counsel), for defendant-appellee.

Before KAUFMAN, OAKES and NEWMAN, Circuit Judges.

OAKES, Circuit Judge:

Ralph Dellacava, a union painter for nearly fifty years, discovered on his retirement in 1984 that, according to the trustees of the union pension fund, he had sustained a break in service in 1969, reducing his pension benefit from $568 to $155 per month. The United States District Court for the Southern District of New York, Charles L. Brieant, Chief Judge, granted summary judgment against Dellacava, finding that he had not worked the requisite thirty-five days in 1969 to avoid a break in service or, alternatively, that even if he had, he could not satisfy the pension plan's requirement that those work days be in "covered employment," i.e., employment for which contributions were paid to the pension fund, 667 F.Supp. 403. We reverse

and, because there are factual issues to be determined, remand for trial.

## FACTS

Dellacava first became an apprentice painter in 1937. During his entire career he was a member of a local union affiliated with the Brotherhood of Painters, Decorators & Paperhangers of America, now within the jurisdiction of Painters District Council No. 20 of Westchester County ("Union").

On April 15, 1963, the Union and the various employers with whom it had collective bargaining agreements established the Painters Pension Fund of Westchester & Putnam Counties (the "Fund"), appellee here, and a Pension Plan by which that Fund would be administered ("the Plan"). Eligible participants receive pension benefits calculated according to the number of days of credited service attained at retirement age. This figure is based on the sum of "past service credit" granted for each day prior to the initiation of the Fund that a participant was a member of the Union, and "future service credit" for each day after April 15, 1963, that a participant worked in "covered employment," that is, for an employer that was a party to a collective bargaining agreement with the Union and for which the employer paid contributions to the Fund.

When Dellacava retired in 1984 and applied for his pension benefits, he was advised that he had sustained a break in service in 1969 and had thereby forfeited all service credits earned prior to 1972. A break in service occurs when a participant fails to work thirty-five days in covered employment during at least one year of a three-year consecutive period. Dellacava does not dispute the fact that he did not work thirty-five days in covered employment in either 1967 or 1968. Nor does he disagree that he also failed to work thirty-five days in covered employment during 1970 and 1971. Dellacava disputes only the trustees' determination that he worked a total of thirty-three days in covered employment in 1969. However, Dellacava's status for that year is critical. If the trustees are correct that Dellacava did not work the requisite thirty-five days in 1969, a break in service would exist for either the years 1967–69 or 1969–71. In either case, Dellacava would forfeit all years of credited service prior to 1972.

In determining the amount of credited service earned by Dellacava, the trustees of the Fund considered only Dellacava's yearly and permanent work cards. The yearly work cards provided the information appearing on Dellacava's permanent work card. So that it may be better understood, the yearly work card for 1969 is set forth in full immediately below:

PAINTERS' INSURANCE FUND OF WESTCHESTER COUNTY　A 179

*1969*

PLAINTIFF'S EXHIBIT NO. FOR IDENTIFICATION DATE

While the meaning of many of the entries on the card is disputed, the parties are in agreement on the following: The extreme left-hand column designates the week of the month to which the reported data applies. The next column, headed "EMP.," records the employee's weekly self-report of hours worked. According to Fund trustee Frank Johnson, the checkmarks appearing for the first and second weeks in March indicate that the Fund did not receive Dellacava's report for those two weeks. Moving right, the column under "EMPLOYER" shows first the amount of worktime for which the Fund received contributions from the employer and next the employer's name. Covered service is reported in some instances in days, e.g., "3 + ," and in others in hours, e.g., "35." The two reported employers are Antavel Painting Co., Inc. ("Antavel"), and Baychester Painting Co. ("Baychester").

There is no dispute that, as the plan sets forth, seven hours of covered work equals one day of credit. There also appears to be no dispute that the union wage rate was $4.90 an hour for March 1969, and $5.30 per hour for April and May 1969. Finally, while the district court did not discuss Del-lacava's Social Security records, they disclose that in 1969, Baychester paid Social Security taxes on Dellacava's wages of $280 in March and $595 in April and May, and that Antavel paid Social Security taxes on $231.08 in wages paid to Dellacava in March.

Dellacava's second amended complaint alleges that he was arbitrarily and capriciously denied the full pension benefits to which he was entitled under the Plan because of the break in service, relying on three distinct jurisdictional bases: the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(e) (1982), *see, e.g., Coward v. Colgate–Palmolive Co.*, 686 F.2d 1230, 1235 (7th Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983); the Taft–Hartley provisions of the Labor Management Relations Act, as amended, 29 U.S.C. § 186(c)(5) (1982), *see, e.g., Lugo v. Employees Retirement Fund of Illumination Prods. Indus.*, 529 F.2d 251, 255 (2d Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); and New York State common law, *see Valle v. Joint Plumbing Indus. Bd.*, 623 F.2d 196, 203 n. 15 (2d Cir.1980);

*Agro v. Joint Plumbing Indus. Bd.,* 623 F.2d 207, 210 (2d Cir.1980); *Mitzner v. Jarcho,* 44 N.Y.2d 39, 374 N.E.2d 388, 403 N.Y.S.2d 490 (1978).

## DISCUSSION

While the sum of covered days on the 1969 yearly work card above is shown as thirty-three (a figure transferred to Dellacava's permanent work card and relied on by the Fund as well as by the district court in reaching their decisions), on appeal the Fund takes the rather extraordinary position that Dellacava worked only thirty-one days in 1969. Lest this point cause any confusion, Dellacava apparently did not self-report the days he worked during the first and second weeks of March for Antavel. We find this irrelevant to the ultimate determination since the yearly report indisputably shows that the Fund received contributions from Antavel for at least six days during that period. When that credit is added to the hours Dellacava did report, it appears, as Dellacava maintains, that he worked at least thirty-seven days.[1]

The Fund argues, however, and the district court agreed, that even if Dellacava worked thirty-seven days in 1969 for eligible employers, only thirty-three days of contributions were paid (twenty-seven by Baychester and six by Antavel), resulting nonetheless in a break in service. Such a determination, however, gives no credit whatsoever to the plus (" + ") marks appearing on the card. Indeed, if we take the amount paid by Antavel as shown on the Social Security statement, namely $231.08, and divide it by $4.90, the then hourly wage

rate, we find that Dellacava worked for Antavel forty-seven hours or 6.7 days, nearly one day more than was credited to him.[2] And since four more work weeks are reported in this imprecise manner, as "4 + " days for each of the last two weeks of March and first two weeks of April, we believe that a reasonable trier of fact could readily find that Dellacava worked at least thirty-five days in covered employment during 1969.

Is such a finding precluded, as the Fund would suggest, as a matter of law? The district court evidently believed so. *Dellacava v. Painters Pension Fund,* 667 F.Supp. 103, 105 (S.D.N.Y.1987). It is true that this court applies the very deferential "arbitrary and capricious" standard of review in actions challenging the decisions of plan administrators. *See, e.g., Haeberle v. Board of Trustees,* 624 F.2d 1132, 1136 n. 6 (2d Cir.1980). Yet, we have also stated:

> Where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious.

*Miles v. New York State Teamsters Conference Pension & Retirement Fund,* 698 F.2d 593, 599 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983) (citations omitted).

■ In light of the need for preserving pension funds from financial ruin, a break-in-service provision such as this one may be

---

1. The Fund concedes, Appellee's Br. 8 n. 3, that Dellacava reported that he worked for Baychester a total of 70 hours or 10 days in March, a total of 140 hours or 20 days in April, and seven hours or one day in May of 1969, and 10 + 20 + 1 = 31. Adding in the six days worked for Antavel, it would appear that he worked 37 days.

2. Social Security records show that Baychester paid Dellacava $280 in March, which divided by the hourly wage of $4.90 equals 57.1 hours, or 8.1 days. This conflicts with the 10 days Dellacava reported during the third and fourth weeks of March, and there is an even greater discrepancy as to April and May. Dellacava self-reported 147 hours (21 days), which at the union wage

rate of $5.30 should have resulted in total payments of $779 for those months. The Social Security earnings record, however, shows payments of only $595 or 16 days' worth, a discrepancy of five days.

How to explain the discrepancies? The suggestion made at oral argument was that Baychester had Dellacava work on a nonunion job. We do not know. Perhaps Baychester's own Social Security reports were in error. More importantly, the Fund's records, on which determinations of eligibility are based, show that Baychester made contributions to the Fund equal to more than 27 days' service for this period.

reasonable on its face but nevertheless may be arbitrarily, and thus improperly, applied. *See Mitzner v. Jarcho*, 44 N.Y.2d at 46, 374 N.E.2d at 391, 403 N.Y.S.2d at 494. Thus, while trustees of pension funds are entitled to "wide latitude" in establishing and modifying requirements necessary to preserve trust fund assets, *Argo v. Joint Plumbing Indus. Bd.*, 623 F.2d at 210, this flexibility "is limited by principles of fundamental fairness." *Valle v. Joint Plumbing Indus. Bd.*, 623 F.2d at 203.

■ Of all the figures on the 1969 card, only the thirty-three day total is unambiguous. The remaining entries demonstrate neither meticulous nor even consistent recordkeeping. There are, for example, unexplained dollar amounts and two odd "7"s appearing in the month column. These figures may, as Dellacava argues, very well represent, respectively, his weekly gross pay and the amounts contributed by employers to the Fund for those weeks. Since these mysterious figures are part of the Fund's own system of recordkeeping, deciphering them may indeed shed light on the amount of service credit to which Dellacava is entitled. Certainly, disregarding them *in toto* is indefensibly arbitrary.

Also troublesome is the Fund's interpretation of plus signs used to record partial days of credited service. According to very confusing testimony of trustee Johnson, the plus marks were purportedly considered in calculating Dellacava's credited service. Yet because the whole numbers alone add up to thirty-three, it is clear on the face of the card that no partial credit was given in this case. In explanation the Fund offered that the plus marks indicate overtime hours worked and that the number of hours represented by those marks do not equal even one seven-hour day. This explanation, however, was "upon information and belief," and as such could not have been considered in the summary judgment motion. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950); *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 & n. 1 (2d Cir.1968). Moreover, such an explana-

tion is entitled to little or no credence in light of other evidence appearing on the card. Assigning a value of zero to the plus marks is the essence of arbitrariness, particularly when Dellacava is only two days short of qualifying for full benefits. To permit the Fund to keep obscure records and later defer blindly to the trustees' interpretation of those murky records to defeat a pensioner's legitimate claim would be patently unfair.

■ Dellacava also argues that the trustees improperly equated the term "credited service" as used in the break-in-service provision with the term "covered employment," resulting in the Fund's erroneously construing the break-in-service rule to require that he establish not only that he worked at least thirty-five days in 1969, but also that his employer made the required contribution for thirty-five days. Article III of the Plan, however, does make it clear in a number of different sections that credited service accrues only when a participant works in "covered employment," that is to say, hours of employment for which an employer makes contributions:

> [B]reak in credited service means any interruption of the Covered Employment of a Participant.... In the event of a break in Credited Service, as defined above, a Participant shall lose all Credited Service ... and if he again becomes a Participant hereunder, he shall, for all purposes of the Plan, be treated as a new employee with Credited Service computed only from the date of his return to Covered Employment.

Finally, article III, paragraph b, pertaining to future service says, "Commencing April 15, 1963, a Participant shall be credited with a year of future service for each calendar year in which he works 35 days in covered employment." In light of these provisions, we cannot say that the trustees' construction of the break-in-service provisions is in and of itself arbitrary.

Even if it is found that Dellacava's employers did not contribute for a full thirty-five days' worth of work, however, there remain the issues of notice to Dellacava of

Baychester's alleged failure to contribute for hours Dellacava reported having worked and the trustees' duty to take action against an employer who fails to contribute to the Fund as required by the Plan. The Fund argues that prior to 1976 under ERISA it had no duty to notify its pensioners of their employers' failure to contribute to the Fund. This argument is without merit, however, since the source of the trustees' duty is the common law. *See Rosen v. Hotel & Restaurant Employees & Bartenders Union,* 637 F.2d 592, 599–600 & n. 11 (3d Cir.) (citing *Phillips v. Kennedy,* 542 F.2d 52, 55 n. 8 (8th Cir. 1976)), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *Restatement (Second) of Trusts* § 173 comment d (1959).

The only evidence presented by the defense on the issue of notice was trustee Johnson's affidavit which stated, "upon information and belief," that notice was sent to Dellacava at the end of 1969. Again, however, we note that such a statement has no probative value and may not be considered in a motion for summary judgment. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. at 831, 70 S.Ct. at 896; *Schwartz v. Compagnie Gen. Transatlantique,* 405 F.2d at 273 & n. 1. The Fund maintains that Dellacava should lose on the issue of notice because he presented "no evidence" (except his own affidavit) that he was not told of his employer's failure to contribute and of the impending break in service. Appellee's Br. 20. It is difficult to see what more "affirmative indication that his version of relevant events is not fanciful," *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980), Dellacava could offer, however, since he is being asked to prove a nonevent.

■ We also find that the yearly and permanent work cards of Dellacava's fellow pensioners demonstrate the existence of a genuine material issue of fact as to whether the trustees' method of calculating Dellacava's pension benefits discriminates against him, particularly as to the weight given self-reported hours. Uneven applica-

tion of a plan provision would be arbitrary and capricious and, therefore, unlawful. *Cf. Donaldson v. Hamburg Sav. Bank,* 568 F.Supp. 897, 900 (E.D.N.Y.1983). On remand, these issues of notice and discrimination need not be reached, of course, if the district court determines that the figures shown on the 1969 yearly work card prove Dellacava had at least thirty-five days of covered employment for that year.

Judgment reversed and cause remanded in accordance with opinion.