Elaine IWANS

v.

**AETNA LIFE INSURANCE CORP., CBIA Service Corp. and Contromatics, Inc.**

Civ. No. 2:92CV00764 (AHN).

United States District Court, D. Connecticut.

June 8, 1994.

David C. Shaw, Hartford, CT.

Kimberly Mango, Mark Ostrowski, Shipman & Goodwin, Hartford, CT, for defendants Aetna and CBIA.

Larry Lissitzyn, Reid & Reige, Hartford, CT, for Contromatics.

### RULING ON MOTION TO DISMISS

NEVAS, District Judge.

The plaintiff, Elaine Iwans ("Iwans"), brings this action for wrongful denial of life insurance benefits against the defendants, CBIA Service Corp. ("CBIA"), Aetna Life Insurance Corp. ("Aetna") and Contromatics, Inc. ("Contromatics"), as executrix of her late husband's estate, as well as on behalf of past and former plan participants who may have been denied benefits because they were 60 or older at the time they became disabled.

Iwans's amended complaint alleges four causes of action. The first two counts allege claims under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, for the alleged breach of fiduciary duty regarding (1) the Plan's disability premium waiver provision and (2) Mr. Iwans's conversion rights under the Plan. The third count alleges a violation of Conn. Gen.Stat. §§ 38a–456 for failure to notify her husband that his group life insurance had been discontinued, or of his right to convert group life insurance coverage to an individual life insurance policy. In the fourth count, Iwans asserts that the defendants violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* by writing and enforcing a discriminatory provision in the group life insurance policy.

Presently, CBIA and Aetna ("defendants" herein) move to dismiss the first three counts of the amended complaint as against them.[1] For the reasons that follow, this motion [docs. # 13, # 35][2] is DENIED as to Counts I and II, and GRANTED as to Count III.

---

1. At oral argument on this motion, the defendants explained that the ADEA claim in Count IV is not challenged in this motion. Contromatics, the third defendant, is not included in the motion.

2. The defendants filed a motion to dismiss Iwans's original complaint on Nov. 6, 1992 [doc. # 13]. Thereafter, Iwans amended her complaint on May 10, 1993, dropping the count for breach of contract, and adding an ADEA claim. Oral argument was scheduled on the motion to

## STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the court is required to accept as true all factual allegations in the complaint and draw inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. at 1684).

## FACTS

With this standard in mind, the facts are as follows. From 1985 to 1991, Aetna issued group life insurance (the "Plan") to CBIA Service Corporation ("CBIA"). Contromatics, as an employer-member of CBIA, offered life insurance under the Plan to its employees. Aetna implemented the Plan and acted as Plan manager. As the Plan manager, Aetna construed and interpreted the Plan, resolved questions arising under the Plan, performed the necessary functions to provide benefits and furnished information concerning benefits to Plan participation.

As President and Chief Executive Officer of Contromatics, Iwans's husband, Robert C. Iwans ("Mr. Iwans"), was entitled to participate in any retirement and employee benefit plans offered, and was eligible for $150,000 in life insurance coverage. In 1988, Mr. Iwans was diagnosed with cancer, and in February, 1991, he suffered a disabling heart attack which seriously impeded his ability to perform his job. As a result, Contromatics reassigned some of Mr. Iwans's responsibilities as CEO from March 1, 1991 through July 8, 1991.

On or about July 1, 1991, Contromatics notified Aetna that Mr. Iwans was no longer eligible for coverage under the Plan. Thereafter, Contromatics discontinued paying premiums with respect to Mr. Iwans's group life insurance coverage under the Plan. By July 8, 1991, Mr. Iwans was totally disabled as a result of his cancer and heart attack, and his employment with Contromatics was terminated under written agreement.

However, neither Contromatics nor Aetna nor CBIA gave Mr. Iwans written notice that his group life insurance coverage was being terminated, or that he had a right to convert his coverage under the group policy to an individual life insurance policy within 31 days of his termination. Rather, upon inquiry Contromatics told Mr. Iwans that converting the Aetna group policy to an individual life insurance coverage was "not an option."

On October 15, 1991, Iwans notified Aetna of her husband's death and demanded payment by Aetna of group life insurance benefits under the Plan. On February 10, 1992, Aetna denied coverage, and informed Iwans that her husband's policy was cancelled on July 1, 1991 and no individual conversion had occurred during the 31–day eligibility period.

On May 27, 1992, Iwans demanded payment from Aetna on the grounds that Mr. Iwans was totally disabled on the date of his termination from Contromatics and was therefore eligible for group life coverage under the Plan, even though no premium payments were made on or after July 1, 1991. However, on August 14, 1992, Aetna informed Iwans that the premium waiver provision of the Plan did not apply to Mr. Iwans

dismiss, but argument was continued so that the defendants could file a motion to dismiss the *amended* complaint. Rather than file a motion to dismiss that responded to the claims as they appear in the amended complaint, the defendants filed a motion to dismiss on June 3, 1993 [doc. # 35], stating that the renewed motion re-

lies on all the previous filings in the case, including the prior motion to dismiss that was directed to the original complaint. Thus, for the purposes of this ruling the court has considered both motions to dismiss [docs. # 13, # 35], as well as all related filings.

because he was over age 60 at the time he became disabled and unable to work. Under the terms of the payment premium waiver provision, if the employee is 60 or older when he or she becomes disabled and is unable to work, the person must continue to pay premiums in order to receive the Plan benefits. If the employee is younger than 60, coverage will continue without premium payments.

## DISCUSSION

### I. Breach of Fiduciary Duty

In Counts I and II, Iwans alleges actions based on the defendants' breach of their fiduciary duties. Although no claim for relief immediately follows these counts, in her prayer for relief, listed separately at the end of her complaint, she seeks individual recovery in the amount of $150,000, as well as punitive damages and liquidated damages for the alleged ADEA violations. In addition, Iwans asks that the defendants be ordered to do the following: 1) identify all Plan participants who became unable to work and were not provided written notification, and allow them an opportunity to convert to individual life insurance coverage; 2) provide life insurance to all Plan participants who became disabled but were denied continuation of coverage because of their age and to refund the premiums paid by these individuals while disabled; and 3) eliminate the requirement that a disabled participant be under age sixty to be entitled to the premium waiver provision of the Plan. (See Am.Compl. at 12.)

ERISA provides for a comprehensive, and somewhat overlapping, civil enforcement scheme. As ERISA's civil enforcement provision, section 502, 29 U.S.C. § 1132, provides:

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

. . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan,

or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan.

29 U.S.C. § 1132(a).

Section 1109, referred to in subsection (2) of the provision, sets forth the liability for breach of fiduciary duty. Under this section, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the . . . duties imposed upon fiduciaries by this subchapter[3] shall be personally liable to make good to such plan . . ., and shall be subject to such other equitable or remedial relief as the court may deem appropriate. . . ." 29 U.S.C. § 1109(a).

These fiduciary responsibility provisions " 'codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.' " *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting H.R.Rep. No. 93–533, at 11 (1972), *reprinted in*, 1974 U.S.C.C.A.N. 4639, 4649). In light of this, the Supreme Court has directed courts to develop a " 'federal common law of rights and obligations under ERISA-regulated plans.' " *Id.* (quoting *Pilot Life v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)).

Although Iwans does not identify the specific sections on which she relies, claims for breach of fiduciary duty must be brought under § 1132(a)(2) or § 1132(a)(3), and not § 1132(a)(1)(B) which provides for recovery of plan benefits. *See Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 992 (7th

---

**3.** The fiduciary duties are defined in 29 U.S.C. § 1104, which provides the general rule that fiduciaries are to discharge their duties with the care and diligence of "a prudent man acting in a like capacity ... with like aims...." § 1104(a)(1)(B).

Cir.1993).[4] With this general framework in mind, the court now turns to the specific claims.[5]

## A. Breach of Fiduciary Duty: Disability Premium Waiver

■ In Count I, Iwans alleges that the defendants breached their fiduciary duties by administering a plan that discriminates on the basis of age in violation of the ADEA. In their renewed motion to dismiss this first cause of action, defendants concede that Iwans has stated a claim for breach of fiduciary duty based on the narrow issue of whether the application of the plan violates federal law (ADEA), but argue that there is no individual right to recovery of damages in a breach of fiduciary duty claim under ERISA. The court disagrees.

Iwans argues that she does not seek monetary damages, but only benefits or injunctive relief. Iwans maintains that such individual claims are permissible as "Congress intended . . . to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." *Massachusetts Life Insurance Co. v. Russell*, 473 U.S. 134, 152–53, 105 S.Ct. 3085, 3095–96, 87 L.Ed.2d 96 (1985) (Brennan, J. concurring). Based on the representation that Iwans seeks only benefits or injunctive relief, and not "extracontractual damages," the main issue posed by the defendant's objection is whether Iwans may seek this relief individually, or only on behalf of the Plan.

Iwans is correct that pursuant to the plain language of ERISA, § 502(a), 29 U.S.C. § 1132(a) and § 409(a), 29 U.S.C. § 1109, the court may award such equitable or remedial relief as it deems appropriate, including, but not limited to, removal of the fiduciary. With respect to claims under § 1132(a)(2), the Supreme Court has made clear, however, that breach of fiduciary duty claims pursuant to this section inure to the plan, not the individual beneficiary. *Russell*, 473 U.S. at 148, 105 S.Ct. at 3093 (" 'neither the statute nor the legislative history reveals a congressional intent to create a private right of action.' " (citation omitted)); *accord Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993); *Bryant v. International Fruit Product Co.*, 886 F.2d 132, 135 (6th Cir.1989) (ERISA language regarding fiduciary duty claims shows that breaches of fiduciary duties injure the plan, not individual beneficiaries and, therefore, any recovery goes to the plan); *Gruby v. Brady*, 838 F.Supp. 820, 829 (S.D.N.Y.1993) (relief must go to the benefit of the plan as a whole).

Although an individual may bring a claim under § 1132(a)(2), the *Russell* Court explained that it was Congress's intent that "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n. 9, 105 S.Ct. at 3090 n. 9. Thus, the defendants are correct that Iwans may not seek individual recovery for breach of fiduciary duty under § 1132(a)(2).

■ The court's inquiry does not end here, however, because the question remains whether this limit on recovery applies to claims under § 1132(a)(3) as well as

---

**4.** *See also* Jay Conison, *Suits For Benefits Under ERISA*, 54 U.Pitt.L.Rev. 1, 13 (1992) (positing that § 1132(a)(1)(B) actions for benefits enforce a *non-fiduciary* duty to participants and beneficiaries).

**5.** At oral argument counsel for Iwans argued that the court should view Iwans's claim as one for benefits under § 1132(a)(1)(B). However, both Counts I and II are captioned as actions for "Breach of ERISA Fiduciary Duties," (First Am. Compl. §§ VI–VII, at 8–9), and, as noted above, such claims must be brought under § 1132(a)(2) or (a)(3). Furthermore, as pled, neither count attempts to enforce the "terms of the plan," § 1132(a)(1)(B); rather, both counts allege ERISA violations, not violations of the terms of

the plan which would be actionable under § 1132(a)(1)(B). *Cf. Richards v. General Motors Corp.*, 850 F.Supp. 1325, —— (E.D.Mich.1994). *Firestone Tire* and *Farrell v. Automobile Club of Mich.*, 870 F.2d 1129 (6th Cir.1989), cited by Iwans, are thus inapplicable. Finally, " 'ERISA permits suits to recover benefits only against the plan as an entity,' " *McManus v. Gitano*, 851 F.Supp. 79, (E.D.N.Y.1994), and it is unclear whether Aetna or CBIA as named in the complaint are the Plan. *Cf. Lee v. Burkhart*, 991 F.2d 1004, 1009 (2nd Cir.1993). Thus, the court views Counts I and II as arising under either § 1132(a)(2) or § 1132(a)(3), but not § 1132(a)(1)(B).

§ 1132(a)(2). While there is a good deal of confusion surrounding this question, case law suggests that § 1132(a)(3) allows for individualized relief. *See, e.g., Lee v. Burkhart,* 991 F.2d at 1011 (rejecting § 1132(a)(3) claim on grounds that money damages are not recoverable, not on grounds that there is no individual right to recovery); *Lorenzen v. Employees Retirement Plan,* 896 F.2d 228, 230 (7th Cir.1990) (discussing in dicta that § 1132(a)(3)(B) may impose liability on a fiduciary that runs directly to the beneficiary); *Bartucca v. Katy Indus., Inc.,* 668 F.Supp. 111, 113 (D.Conn.1987) (holding that *Russell* does not prohibit an individual suit under § 1132(a)(3)). *But see Horan v. Kaiser Steel Retirement Plan,* 947 F.2d 1412, 1418 (9th Cir.1991) (regardless of whether claim is under § 1132(a)(2) or (a)(3), beneficiaries may not pursue individual claims). While *Bartucca* has been partially overruled by *Mertens* to the extent that it found that damages were recoverable under § 1132(a)(3), there is no reason to conclude that *Mertens* affects *Bartucca's* general holding that § 1132(a)(3) al-

lows for individual recovery. Indeed, at least one post-*Mertens* case has squarely held that "an individual may seek equitable relief from a breach of fiduciary duty under § 1132(a)(3)." *Anweiler v. American Elec. Power Serv. Corp.,* 3 F.3d 986, 993 (7th Cir. 1993).

Because the court agrees that "[e]quitable relief running to the individual falls within the scope of both 1132(a)(3)'s language and ERISA's broad remedial purpose[,]" *Id.,* and is a necessary by-product of the statute's broad preemptive scope, the defendants' motion to dismiss with respect to this claim shall be denied.[6] It should be clear, however, that Iwans is limited to seeking individual equitable relief, and not monetary damages, under this claim.[7]

### B. Breach of Fiduciary Duty: Notice of Conversion Rights

In Count II, Iwans alleges that defendants violated their fiduciary duty by not providing a reasonable opportunity to con-

---

**6.** In its brief as amicus curiae submitted in *Mertens,* the Department of Labor persuasively reconciled the difference in remedies available under § 1132(a)(2) and (a)(3). As it explained, "Section 409, as implemented by Section 502(a)(2), places a floor under the types of relief available from a fiduciary...." Thus, under this interpretation, these sections establish the basic minimum remedies, while "Sections 502(a)(3) and 502(a)(5) complete the scheme, by broadly authorizing courts to develop other remedies as appropriate in light of the equitable principles underlying ERISA...." (Brief of the United States, at § D, ¶ 3.)

**7.** Any question left open by *Russell* as to whether damages could be recovered as "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3), *Russell,* 473 U.S. at 150, 105 S.Ct. at 3094, appears to have been answered in *Mertens v. Hewitt Assoc.,* —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). In that case, construing § 1132(a)(3), the Court explained: "though we have never interpreted the precise phrase 'other appropriate equitable relief' we have construed the similar language of Title VII of the Civil Rights Act of 1964 ... to 'preclude awards for compensatory or punitive damages.'" *Id.* at ——, 113 S.Ct. at 2068 (quoting *United States v. Burke,* 504 U.S. ——, ——, 112 S.Ct. 1867, 1872, 119 L.Ed.2d 34 (1992)). In so holding, the Court expressly rejected the argument, advanced here by Iwans, that ERISA's roots in the common law of trusts suggests that a beneficiary may recover damages as "other equitable relief." Rather, the

Court held that "equitable relief" must mean only "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Id.* —— U.S. at ——, 113 S.Ct. at 2069.

*Lee v. Burkhart,* 991 F.2d 1004 (2d Cir.1993), although decided before *Mertens,* is in accord with the Supreme Court's decision and instructive. In *Lee,* two employee health plan participants brought an action to recover medical costs that were incurred by them and covered by the plan but unpaid due to the bankruptcy of the plan's self-insured sponsor. Affirming the district court's dismissal of the complaint, the Second Circuit held, consistent with the court's discussion above, that plaintiffs were barred from suing under § 1132(a)(2) because the fiduciary duties enforced under that section "run to a plan and not to individual beneficiaries." *Id.* at 1009 (citing *Russell,* 473 U.S. at 140–44, 105 S.Ct. at 3089–91). Furthermore, the court held that plaintiffs failed as well to state a claim under § 1132(a)(3) as the "plain language of the statute does not provide for monetary relief and review of the legislative history confirms that Congress did not contemplate that [appropriate equitable relief] would include an award of money damages." *Id.* at 1011. This does not mean, however, that Iwans would necessarily be barred from recovering the benefits to which she claims she is entitled through an equitable remedy such as a constructive trust on the proceeds. *See Anweiler,* 3 F.3d at 993.

vert Mr. Iwans's group life insurance policy to an individual policy after learning that Mr. Iwans was not properly informed of his rights.[8]

Defendants argue that Count II should be dismissed against them because they had no general duty to inform Mr. Iwans of his conversion rights, and Iwans has failed to allege any facts creating such a duty. Again, the court disagrees.

■ Defendants are correct that they had no general duty to notify Mr. Iwans of his right to convert his policy because they were not the "plan administrators" or "plan sponsors" by the terms of the contract. 29 U.S.C. § 1002(16)(A)(i)–(ii). Because ERISA creates a duty in plan administrators to furnish a clear description of the rights and obligations of all participants, it is the plan administrator, Contromatics, not the insurers, who has the duty of distributing the required summary plan description ("S.P.D.") to all insureds. 29 U.S.C. § 1021(a). In *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296 (9th Cir.1989), for example, the court held that the insurer who was not the plan administrator, did not bear the fiduciary burden of S.P.D. distribution. Similarly in *Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 985–86 (8th Cir.1992), the court held that ERISA did not "require that the appellee had a duty individually to warn ... each and all of the members of the plans which it insured that their benefits would be reduced according to the plan's coordination of benefits provision...." *Accord Stahl v. Tony's Bldg. Materials*, 875 F.2d 1404, 1409 (9th Cir.1989) (holding that summary plan description, and not individual notification, is all that ERISA requires of plan's insurer).

Yet Iwans does not contest that the primary duty lies in the administrator. Rather, she argues that the defendants became obligated to take remedial action once they learned that Iwans had been misinformed by Contromatics that he had no right to convert. Iwans relies in large part on *Eddy v. Colo-*

*nial Life Insurance Co.*, 919 F.2d 747 (D.C.Cir.1990), which held that an insurer has the affirmative obligation to correctly inform the insured of his conversion rights under the policy.

■ The court recognizes that *Eddy* is not directly on point as Iwans does not allege that the defendants directly misinformed or misled her husband. *Eddy* is instructive, however, insofar as it reaffirms that fiduciary duties are on-going, and not as static as the defendants suggest. Rather, ERISA must be interpreted in the context of the common law trust principles upon which the statute is predicated. *See Eddy*, 919 F.2d at 750 (quoting *Central States, Southeast & Southwest Areas Pension Fund v. Central Trans.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985)). Under these principles, a fiduciary has a duty "not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the relationship." *Id.* For example, as the *Eddy* court explained, "a fiduciary bears an affirmative duty to inform a beneficiary of the fiduciary's knowledge of prejudicial acts by an employer...." *Id.* (citing *Dellacava v. Painters Pension Fund*, 851 F.2d 22, 27 (2d Cir.1988)). Similarly, the Second Circuit has explained that where a fiduciary has actual knowledge of a co-fiduciary's breach, but fails to correct the breach, the fiduciary might itself be liable for breach of its obligations. *Lee*, 991 F.2d at 1010.

While Iwans has not alleged that defendants had actual knowledge that Mr. Iwans was misinformed about his conversion rights within the 31–day eligibility period, or even before Mr. Iwans's death, she has alleged that Aetna had knowledge of the circumstances surrounding her claim at least by May 27, 1992, less than 12 months after Mr. Iwans's termination. (*See* Pl.Ex. G.) Although defendants argue that this notice was beyond the conversion period, and thus irrelevant for the purposes of this claim, Iwans

---

8. Once again, it is unclear what section this claim is brought under. Yet because Iwans apparently seeks individual relief in the form of the right to exercise the conversion of Mr. Iwans's policy, and bases such relief on breach of fiducia-

ry duties allegedly owed to Mr. Iwans personally, rather than to the Plan (as in Count I), the court construes this count as attempting to state a claim under § 1132(a)(3), not § 1132(a)(2).

may be able to prove that the timeliness of this notice should be assessed in light of the provision allowing notice of disability extension claims to be filed within 12 months after the employee stops work (*see* Plan, Pl.Ex. H at 3), or the provision allowing filing of claims within 12 months of the deadline where failure to meet the deadline is not the fault of the participant (*see id.* at 7), rather than the 31–day conversion period (*see id.*), on which the defendants rely. Therefore, defendants' motion to dismiss Count II shall be denied.[9]

## II. *Count III: Preemption of Connecticut General Statute § 38a–456*

■ In Count III, Iwans alleges that the defendants violated Conn.Gen.Stat. § 38a–456 [10] by failing to properly notify Mr. Iwans of the discontinuation or cancellation of his right to coverage under the Plan. Defendants argue that the count must be dismissed because the statute applies only to the employer and not the insurer, and even if it did apply, it is preempted by ERISA. The court need not decide whether the statute applies to insurers because the court agrees that the action is preempted by ERISA.

The ERISA preemption clause requires preemption of state laws that "relate to ... employee benefit plan[s]." 29 U.S.C. § 1144(a). Whether a state law may be said to be related to an employee benefit plan turns on a common sense interpretation of relatedness. As the Supreme Court has explained, a state law "relates to" a plan " 'if it has a connection with or reference to such a plan.' " *Pilot Life Insur. Co. v. Dedeaux,*

481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) (quoting *Metropolitan Life Insur. Co. v. Com. of Mass.,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985)). Indeed, the Court emphasized that "preemption is not limited to "state laws specifically designed to affect employee benefit plans." *Id.* (citation omitted). The ERISA saving clause, however, excepts from preemption state laws that regulate insurance generally. 29 U.S.C. § 1144(b)(2)(B).

Iwans contends that the state cause of action is not preempted as the statute is one of general application, does not "relate" to an ERISA plan and places no additional burdens on the plan administrators or plan assets. In *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), for example, the Court found that a state statute requiring a one-time severance payment in the event of a plant closing did not place any administrative burdens on employee benefit plans and therefore was not preempted by ERISA. The Court emphasized that ERISA preemption applies only to state laws relating to plans, and not state laws relating only to benefits.

*Howard v. Gleason Corp.,* 901 F.2d 1154, 1157 (2d Cir.1990), however, illuminates the parameters of the *Fort Halifax* holding. In *Howard,* the Second Circuit found that a New York law that required the insurer or employer to give notice of the right to conversion was preempted by ERISA. As the court explained, "[a] state law that purports to impose on an employer obligations of the same general types as those imposed by

---

**9.** The court notes that Iwans has not stated a claim for detrimental reliance that would estop the insurers from denying conversion rights. *See generally Reid v. Gruntal,* 763 F.Supp. 672, 678 (D.Me.1991) (holding that claims for promissory estoppel may be pursued under § 1132(a)(3) even where no breach of fiduciary duty is alleged). The Second Circuit has recognized that "under 'extraordinary circumstances' " principles of estoppel may apply in ERISA cases. *See Lee,* 991 F.2d at 1009 (citing *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1039 (2d Cir.1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986)). To state a federal common law claim for equitable estoppel in this circuit, a plaintiff must allege "(1) material representation, (2) reliance and (3) damage." *Lee,* 991 F.2d at 1009. Yet Iwans

does not allege that Aetna or CBIA made any material representations on which Mr. Iwans relied, or that the representation made by Contromatics that conversion was not an option was or should be chargeable to the other defendants. Such a claim, however, has not been raised or challenged in this action.

**10.** Conn.Gen.Stat. § 38a–456 provides, in part, as follows:

Any individual, partnership, unincorporated association providing group life insurance coverage for its employees shall furnish each insured employee, upon cancellation or discontinuation of such insurance, notice of the cancellation or discontinuation of such insurance.

ERISA cannot be said to have a 'remote' or 'tenuous' effect on the plan." *Howard,* 901 F.2d at 1157. *See also Travelers v. Cuomo,* 14 F.3d 708, 720–721 (2d Cir.1993), *petition for cert. filed,* 62 U.S.L.W. 3625 (March 9, 1994).

Iwans attempts to distinguish *Howard* on the grounds that the Connecticut statute does not require notice of the conversion right, but only written notice that coverage has been discontinued or cancelled. *Howard,* however, does not turn on the fact that the notice concerned conversion, but on the fact that the notice concerned issues addressed by ERISA and undermined the overall "goal of ERISA to provide uniform, national regulation of benefit plans." *Howard,* 901 F.2d at 1158 (citation omitted). Contrary to Iwans's contention, both of these concerns are implicated by application of § 38a–456 to these facts.

Indeed, the notice of cancellation requirement in Conn.Gen.Stat. § 38a–456 is more like the New York law found to be preempted in *Howard,* than it is like the one-time severance payment that the *Fort Halifax* Court found was not preempted. Like the New York law, the Connecticut law would place additional and potentially substantial burdens on the administration of the employee benefit plan. Moreover, unlike the law in *Fort Halifax,* the Connecticut statute would "require an ongoing administrative program to meet the employer's obligation." *Fort Halifax,* 482 U.S. at 11, 107 S.Ct. at 2217; *compare James v. Fleet/Norstar,* 992 F.2d 463, 466 (2d Cir.1993). Therefore, the court concludes that the state cause of action is preempted by ERISA, and Count III shall be dismissed.

## CONCLUSION

Based on the foregoing, the defendants' motion to dismiss [docs. # 13, # 35] is DENIED as to Counts I and II, and GRANTED as to Count III. Count III shall, therefore, be dismissed as to all defendants.

SO ORDERED.