948 F.2d 993
 57 Fair Empl.Prac.Cas. (BNA) 330,
57 Empl. Prac. Dec. P 41,205, 60 USLW 2344,
14 Employee Benefits Cas. 1673
 Thelma FLEMING, Plaintiff-Appellant, Cross-Appellee,
v.
AYERS & ASSOCIATES a/k/a and d/b/a Covington Manor and
Brownsville Manor Nursing Homes; a/k/a and d/b/a Covington
Manor Nursing Home and Brownsville Manor Nursing Home,
Defendants-Appellees, Cross-Appellants.
 Nos. 90-6412, 90-6479.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 29, 1991.
Decided Nov. 1, 1991.
 
 Wanda S. Donati, Donald A. Donati (briefed), Jeffery L. Atchley (argued and briefed), Donati & Associates, Memphis, Tenn., for plaintiff-appellant, cross-appellee.
 Charles Hampton White (briefed and argued), Nashville, Tenn., for defendants-appellees, cross-appellants.
 Before KENNEDY and JONES, Circuit Judges, and GIBSON, Chief District Judge.*
 KENNEDY, Circuit Judge.
 
 
 1
 The District Court, after a bench trial, found that plaintiff Thelma Fleming was discharged by her employer because of expected high medical costs for her infant child. Defendant Ayers & Associates, et al., was self-insured for employees' and dependents' medical expenses. The court held that Ayers' action violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, but did not constitute sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k). The court awarded money damages to Fleming but denied her request for reinstatement to her former job. Finally, the court awarded only a portion of the attorney's fees requested by Fleming. Fleming now appeals the District Court's denial of her Title VII claim, denial of her request for reinstatement to her former job, and the amount of attorney's fees awarded. Ayers cross-appeals the District Court's judgment in favor of Fleming on her ERISA claim. We AFFIRM the District Court's disposition of the Title VII and ERISA claims, including the decision not to order reinstatement as a remedy for the ERISA violation. However, we REVERSE the attorney's fees issue and REMAND for further explication by the District Court as to how it determined the amount of fees to award.
 
 I. Background
 
 2
 Thelma Fleming is a 35-year-old Licensed Practical Nurse ("LPN"). Covington Manor Nursing Home and Brownsville Manor Nursing Home are Tennessee corporations which operate nursing homes in their respective cities. Ayers & Associates is a Tennessee corporation which manages nursing homes, including Covington Manor and Brownsville Manor.
 
 
 3
 Plaintiff began working as an LPN at Covington Manor in September 1980. In early 1983, Fleming became pregnant, expecting the birth of her child in November or December 1983. However, the baby was born prematurely in September suffering from hydrocephalus,[1] resulting in the hospitalization of the baby for some three months. Plaintiff's pregnancy-related medical expenses amounted to approximately $4,000 while the infant's independent expenses were in excess of $80,000.
 
 
 4
 Due to health complications from the pregnancy and personal problems connected with the extended hospitalization of her daughter, Fleming extended her maternity leave. After her daughter was released from the hospital, plaintiff talked to the administrator of Covington Manor in early December 1983 about returning to work on a part-time basis. Later that month, however, Fleming contacted the Covington Manor administration and indicated that she would like to transfer to the Brownsville Manor facility, which was closer to her home and would make it easier to care for her child. She resigned from the Covington facility on December 23, 1983.
 
 
 5
 On December 28, 1983, Fleming met with Sharon Crawley, the director of nursing at Brownsville Manor, who offered plaintiff an LPN job that day. Ayers disputes that Fleming was actually hired at that time--claiming that there had been only an "offer of prospective employment"--although Sharon Crawley and Crawley's supervisor Johnny Neal Townsend testified that Fleming had in fact been hired on December 28th. Plaintiff was instructed to report to work on the following Monday, January 3, 1984.
 
 
 6
 However, on December 29, 1983, Fleming received a call from Nurse Crawley advising plaintiff that her services would not be needed. At trial Crawley testified that a short time after she hired Fleming, Crawley was instructed by her supervisor, Townsend, to tell plaintiff that Brownsville Manor was not going to fill the position. Crawley testified that Townsend told her that "there was a problem with the insurance, and he said, 'And just don't hire her at this time until we get this straightened out.' " Defendant admits "that Ayers' decision not to hire Fleming at the Brownsville Manor Nursing Home [was] because of the high insurance costs associated with the illness of her child after birth."
 
 
 7
 Plaintiff's original complaint contended that her discharge was based on her race, her sex and/or her use of benefits related to her pregnancy in violation of Title VII. The issues were narrowed in pretrial proceedings and the case was tried in the District Court primarily upon the allegation that defendant had violated Title VII. At the conclusion of the evidence, the District Court sua sponte requested that the parties address the issue of the applicability of ERISA section 510, 29 U.S.C. § 1140, to this case. The court took the matter under advisement to await the filing of post-trial briefs. Plaintiff then was permitted to amend her complaint to add a claim for relief under ERISA.
 
 
 8
 On July 18, 1990, the District Court issued its Findings of Fact and Conclusions of Law. Therein, the court held that there was no violation of Title VII but that defendant had violated ERISA by discriminating against Fleming because of her expected use of employee benefits. The District Court went on to grant plaintiff some back pay, deny the remedy of reinstatement, and award her attorney's fees of $5,000 rather than the $22,405 she requested. Plaintiff's motion to alter or amend was denied and this appeal ensued. Ayers cross-appeals the judgment in favor of Fleming under ERISA.
 
 II.
 
 9
 Fleming contends that the District Court erred in (1) finding no violation of Title VII; (2) denying reinstatement as a remedy for the ERISA violation; and (3) not granting the full amount of attorney's fees requested.
 
 A. Pregnancy Discrimination Act
 
 10
 Fleming maintains that Ayers' failure to employ her (or as the District Court found, Ayers' discharge of her) was sex discrimination in violation of Title VII. Ayers contends that Fleming was treated as she was because of her poor work performance and because of the high medical costs which would be incurred by her infant daughter, neither of which is discrimination on the basis of gender.
 
 
 11
 The District Court found that the true reason for plaintiff's discharge was Ayers' desire to avoid high future medical costs for Fleming's child which would be paid by Ayers' self-insurance plan. This, the court found, was unrelated to plaintiff's gender or pregnancy and therefore no Title VII violation was shown.
 
 
 12
 The Pregnancy Discrimination Act of 1978 (the "Act"), 42 U.S.C. § 2000e-(k), a definitional amendment to Title VII, was enacted to clarify that Title VII's proscription of gender-based employment discrimination included discrimination on the basis of pregnancy. The Act provides that
 
 
 13
 The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-oriented purposes, including receipt of benefits ... as other persons not so affected but similar in their ability or inability to work....
 
 
 14
 42 U.S.C. § 2000e-(k).
 
 
 15
 The problem with Fleming's argument is that she has not linked the reason for Ayers' decision--high medical costs for her child--to her gender or to her pregnancy. The fact that her pregnancy ultimately produced her child does not make actions taken with respect to the child actions "because of or on the basis of" her pregnancy.[2] 2] It seems to us obvious that the reference in the Act to "women affected by ... related medical conditions" refers to related medical conditions of the pregnant women, not conditions of the resulting offspring. Both men and women are "affected by" medical conditions of the resulting offspring. This commonsense reading of the statute is supported by the legislative history of the Act. See, e.g., H.R.Rep. No. 948, 95th Cong., 2d Sess. 5, reprinted in 1978 U.S.Code Cong. & Admin.News 4749, 4753 ("the bill in [sic] intended to be limited to effects upon the woman who is herself pregnant, bearing a child, or has a related medical condition"). The purpose of the 1978 amendment, as evidenced by its language, was to clarify the scope of Title VII to cover virtually any distinction by employers based on pregnancy-related conditions of employees. This does not encompass adverse employment actions based upon the medical condition of a child simply because the child's condition is present at birth.
 
 
 16
 Furthermore, Fleming has not demonstrated that Ayers' decision has any linkage whatsoever to gender. Ayers' reluctance to employ Fleming was based upon the costs associated with providing expensive ongoing medical care for her child, which reluctance was unrelated to the fact that Fleming is a woman. Unlike pregnancy and its attendant medical conditions, dependent medical expenses are not gender-specific.
 
 
 17
 In view of the District Court's finding that the reason for Ayers' action was to avoid medical costs associated with plaintiff's child, a finding plaintiff has not contested, we hold that Ayers' discharge of Fleming did not constitute sex discrimination under Title VII.
 
 B. ERISA
 
 18
 Ayers does not challenge the District Court's finding that Fleming was discharged in order to avoid incurring what were foreseen to be high future medical expenses for Fleming's child. Nor does Ayers dispute that ERISA would prohibit the discharge of Fleming for that reason if Fleming was an employee entitled to dependent health care benefits. Rather, Ayers claims that Fleming was not a "participant" in a benefit plan under ERISA section 510, 29 U.S.C. § 1140, which provides in pertinent part:
 
 
 19
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ..., or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.... (Emphasis added).
 
 
 20
 Under ERISA, "participant" means "any employee ... of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7). Ayers argues that although they had "agreed to hire Fleming on December 28, 1983," the agreement was "prospective, and Fleming's employment was not to begin until January 3, 1984." Therefore, because Fleming was not an employee when the adverse decision was made between December 28th and January 3rd, she was not a "participant" and is not entitled to protection under section 1140.
 
 
 21
 The District Court did not accept Ayers' argument and found that Fleming was an Ayers employee as of December 28, 1983. Specifically, the court found that on that date Fleming was "hired at Brownsville Manor and went through employee orientation which included reviewing documents such as the employment manual, job description, and other policies of the company. Fleming was hired to work the 7-3 and 3-11 shifts on a part-time basis until a full-time opening arose. Fleming was instructed to report to work on the following Monday." The District Court's conclusion that Fleming was hired and became an employee of Brownsville Manor on December 28, 1983 is amply supported by the record and is not clearly erroneous.
 
 
 22
 Ayers contends that even if Fleming was an employee as of December 28, 1983, she was only a part-time employee and as such was not eligible for insurance benefits under the Ayers' insurance plan. Therefore, Ayers contends, even if Fleming was an employee she was not a "participant" in the health insurance plan. We disagree. The District Court found that Fleming was hired with the intent that she move into a full-time position when a job became available. Ayers has not argued that the District Court erred in making that finding. A "participant" under ERISA includes not only employees who are currently eligible for certain benefits but also those employees who "may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7) (emphasis added). Here, it is not disputed that Fleming would have become eligible for Ayers' health insurance benefit upon moving to a full-time nursing job. Thus, we cannot say that the District Court erred in finding Fleming to be a "participant" within the meaning of section 510 of ERISA, 29 U.S.C. § 1140.
 
 C. Reinstatement
 
 23
 Fleming contends that the District Court should have ordered her reinstated to her position at Brownsville Manor Nursing Home as part of the remedy for Ayers' violation of ERISA. The District Court found that Fleming was entitled to back pay for only a portion of the time following her discharge.
 
 
 24
 Although victims of illegal discrimination are presumptively entitled to reinstatement, Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir.1985), and reinstatement should be granted in the ordinary case, In re Lewis, 845 F.2d 624, 630 (6th Cir.1988), reinstatement is an equitable remedy which is not appropriate in every case. The overarching goal in fashioning relief is to place the injured party, as nearly as possible, in the position they would have occupied absent the illegal discrimination. Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Accordingly, the district court has broad discretionary powers to fashion the relief which will best achieve that "make whole" objective.
 
 
 25
 Following her discharge from Brownsville Manor, Fleming took a job at Maplewood Nursing Home in Jackson, Tennessee. She quit that job in May 1985 citing the mental and physical strain associated with the care of her infant daughter. In denying reinstatement as a remedy, the District Court found that Fleming had voluntarily resigned her employment at Maplewood in May 1985, and would also have resigned her employment at Brownsville Manor Nursing Home had she been so employed at that time. The District Court also found that Fleming had someone else to help support her in 1986 and had another child in 1987, and was not interested in working full-time from May 1985 until May 1988, when she sought and obtained other full-time employment. Based upon these findings, the District Court held that Fleming was entitled to back pay from January 1984 through May 1985, less the amount she actually earned during that time. This amounted to $5,385.00.
 
 
 26
 There is evidence in the record to support the District Court's findings and those findings justify the court's conclusion that reinstatement is not an appropriate remedy in this case, where to do so is not necessary to make Fleming whole.[3]D. Attorney's Fees
 
 
 27
 As a prevailing party on her ERISA claim, Fleming is entitled to reasonable attorney's fees and expenses. Fleming originally sought fees of $29,602.50, plus expenses of $1,464.83. After Ayers objected, Fleming reduced her claim for attorney's fees to $22,405. The District Court, noting the importance of the degree of success in determining what constitutes a reasonable attorney's fee, awarded plaintiff $5,000 in fees together with the claimed $1,464.83 in costs. Fleming argues that the District Court erred in reducing her attorney's fees to $5,000.
 
 
 28
 The District Court found that Fleming's attorney had adequately documented the number of hours for which he is seeking reimbursement, and that the number of hours expended was reasonable. The District Court also found that the hourly rates claimed by Fleming's counsel are reasonable. Finally, the District Court found that current hourly rates are appropriate in order to compensate for the delay in payment. The court summarized its reason for reducing plaintiff's requested attorney's fees thus: "Because plaintiff had only limited success in this action, it would be inappropriate to award her attorneys full compensation for all hours expended."
 
 
 29
 This case presents an unusual set of circumstances with respect to the issue of the degree of success question. The case was filed on the basis of a number of claims which, by the time of trial were narrowed to a sex discrimination claim. Fleming lost on that claim, which was the only one filed, prepared and tried. However, she ultimately prevailed on an ERISA claim which was suggested to her by the District Court after the conclusion of the trial. Even with respect to that claim, plaintiff's success was only partial in that she sought full back pay and reinstatement but was only awarded a portion of back pay. Fleming argues that the facts and circumstances of the ERISA claim are identical to those of the pregnancy discrimination claim under Title VII and that the District Court improperly reduced her fee award simply because the court did not adopt all her contentions. Essentially, plaintiff contends that she claimed illegal discrimination and that she prevailed, never mind that she did not prevail under the theory she filed, prepared and tried to the District Court. In light of plaintiff's limited success, both in terms of legal claims and her ultimate relief, we agree with the District Court that this is a case where the plaintiff has achieved only limited success.
 
 
 30
 Where, as here, the District Court reduces the attorney's fees because of plaintiff's limited success, the issue on review is whether the District Court abused its discretion. See Coulter v. Tennessee, 805 F.2d 146, 151, 152 (6th Cir.1986), cert. denied, 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987).
 
 
 31
 In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court clarified the proper relationship between the results obtained and an award of attorney's fees. In that case the Court held that the degree of success achieved "is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Id. at 434, 103 S.Ct. at 1940. In cases like this one where the plaintiff's claims involve a common core of facts, much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. In such cases the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." 461 U.S. at 435, 103 S.Ct. at 1940.
 
 
 32
 The Hensley Court recognized that there is no precise rule or formula for determining the reasonableness of an attorney's fee. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." Id. at 436-37, 103 S.Ct. at 1941. After reemphasizing the discretion vested in the district court to determine the amount of a fee award, the Hensley Court held that "[w]hen an adjustment is requested on the basis of ... [the] limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." Id.; see also Kelley v. Metropolitan County Bd. of Educ., 773 F.2d 677, 685-86 (6th Cir.1985) (en banc) (discussing Hensley and remanding for the district court to examine the extent to which plaintiffs prevailed on each substantive issue before awarding fees), cert. denied, 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986).
 
 
 33
 In Walje v. City of Winchester, 773 F.2d 729 (6th Cir.1985), this Court addressed the issue of what a district court must do to "make clear" that it has considered the relationship between the degree of success and the fees awarded. The Walje Court held that while a district court retains considerable discretion in determining a reasonable fee, it must "provide a specific explanation of how it arrives at any reduced award" when it does so because of its finding that the plaintiff has achieved only limited success. Id. at 733.[4] Without such an explanation this Court is unable to effectively review the fee award.
 
 
 34
 The only statement by the District Court below regarding the amount of the fees awarded was that "[b]ecause [Fleming's attorneys] have rendered valuable service to plaintiff in this action, they are awarded fees in the amount of $5,000.00, limited only because of the limited success which plaintiff obtained." While the District Court did earlier make clear its reasons for why the requested fee was to be reduced, it provided no explanation of how the fee was reduced. Therefore, we find that the District Court abused its discretion in awarding attorney's fees in the amount of $5,000 without providing an adequate statement explaining how the fee award was reduced.
 
 III.
 
 35
 Accordingly, the decision of the District Court is AFFIRMED on the Title VII and ERISA issues and on the issue of the remedy afforded to Thelma Fleming. The decision on the attorney's fees issue is REVERSED, and the case is remanded to the District Court for further consideration of that issue in accordance with this opinion.
 
 
 36
 JONES, Circuit Judge, concurring and dissenting.
 
 
 37
 I concur in parts II.B & D of the majority opinion, and I concur in the result reached in part II.A. I write separately, however, to explain my differing rationale for that result and to dissent from part II.C.
 
 
 38
 * The majority correctly notes that the district court found the true reason for Fleming's discharge from employment was Ayers' desire to avoid high future medical costs for her child. Discrimination based on health insurance payments for an employee's dependent children does not become discrimination " 'on the basis of sex' " or "on the basis of pregnancy, childbirth, or related medical conditions," 42 U.S.C. § 2000e(k), merely because the employee in question gave birth to the child. The claim is more properly cognizable under ERISA.
 
 
 39
 I feel the majority goes too far, however, in stating that "[i]t seems to us obvious that the reference in the Act to 'women affected by ... related medical conditions' refers to the related medical conditions of the pregnant women, not conditions of the resulting offspring." Supra p. 996. This dictum is in direct conflict with International Union, UAW v. Johnson Controls, Inc., --- U.S. ----, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991).
 
 
 40
 In Johnson Controls, the Supreme Court struck down the defendant's policy of excluding all fertile women from its lead battery plant based upon an alleged concern for their future children. Id. 111 S.Ct. at 1199. Among its justifications for the plan was the employer's concern for potential tort liability if the women working in the plant bore handicapped children. Id. at 1208. The Court responded, in part, as follows:
 
 
 41
 [T]he spectre of an award of damages reflects a fear that hiring fertile women will cost more. The extra cost of employing members of one sex, however, does not provide an affirmative Title VII defense for a discriminatory refusal to hire members of that gender. Indeed, in passing the PDA, Congress considered at length the considerable cost of providing equal treatment of pregnancy and related conditions, but made the 'decision to forbid special treatment of pregnancy despite the social costs associated therewith.'
 
 
 42
 Id. at 1209 (citations omitted).
 
 
 43
 It hardly requires a stretch to reach the conclusion that if employers cannot exclude a woman from employment based upon fear of the costs of tort liability with respect to her offspring, they also cannot exclude based upon the provision of health benefits for those offspring. Thus, in an appropriate case, the PDA clearly prohibits discrimination based upon not only the medical condition of the woman but also that of her child, and the majority's statement to the contrary is erroneous.
 
 II
 
 44
 After affirming that Ayers did in fact discriminate against Fleming in violation of ERISA, the majority also affirms the district court in limiting back pay to the period before May 1985 and in denying reinstatement. I respectfully dissent.
 
 
 45
 It is well settled that victims of discrimination are presumptively entitled to reinstatement. Franks v. Bowman Transp. Co., 424 U.S. 747, 770-780, 96 S.Ct. 1251, 1267-1272, 47 L.Ed.2d 444 (1976) (reversing the district court's denial of reinstatement relief and ordering hiring with seniority credit to class members found to be victims of racial discrimination under Title VII); Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir.1985) ("successful Title VII claimants are ... presumptively entitled to reinstatement"). In Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Court recognized that district courts have wide discretion to fashion "the most complete relief possible" for discrimination. Id. at 421, 95 S.Ct. at 2373. The Court also noted, however, that this discretion is not "shielded from thorough appellate review" and must be "guided by sound legal principles." Id. at 416, 95 S.Ct. at 2371. This circuit has unequivocally determined that absent exceptional circumstances, reinstatement should be granted. In re Lewis, 845 F.2d 624, 630 (6th Cir.1988).
 
 
 46
 In the instant case, the district court denied reinstatement because it found that Fleming voluntarily quit her position at Maplewood Nursing Home in May 1985 and that she would have quit her position even if she had been working at Brownsville. J.A. at 72. The court found her reason for quitting to be "her mental and physical condition resulting from the stress and tension of the new baby." Id. Fleming contends that she quit because the thirty-one mile commute from Brownsville (where she lived) to Jackson (the location of the Maplewood Nursing Home) forced her to be too far away from her sick baby. She contends that had she received the job at Brownsville, she would not have had to quit because the job would have been located in her home town.
 
 
 47
 This dispute seems to be one of fact, and I ordinarily would not suggest disturbing the district court's finding. In this case, however, the district court's rationale for denying full back pay and reinstatement seems to me problematic. After concluding that Fleming would have quit even if she had been employed at Brownsville, the court goes on to state that "[p]laintiff had someone else who helped to support her in 1986, and she had another child in 1987. Clearly, plaintiff was not interested in working full-time from May 1985 until May 1988, at which time she obtained other full-time employment." Id. at 72-73.
 
 
 48
 That conclusion seems to me problematic because it is based upon two stereotypical presuppositions that the PDA was designed to alleviate. First, the court assumes that women would not work if they could find other means of support. Second, the court assumes that Fleming's decision to have another baby is somehow fundamentally inconsistent with a desire to work full time. The facts that Fleming sought to work full time at Brownsville after the birth of her first child and that she later obtained full-time work at Maplewood suggest that Fleming would have worked full time despite her having another baby. Further, the court's attribution of a desire not to work to the decision to have a child is precisely the sort of presumption that employers are prohibited from making with respect to women's decisions regarding pregnancy and childbirth. Therefore, it seems to me that the district court's rationale is at best a highly questionable if not wholly impermissible ground on which to refuse Fleming the legitimate remedies of reinstatement and full back pay.[1] Thus, I would reverse on this issue, reaching the conclusion that the district court's finding here was clearly erroneous.
 
 
 
 *
 The Honorable Benjamin F. Gibson, Chief Judge of the United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 The increased accumulation of cerebrospinal fluid within the ventricles of the brain, resulting from developmental anomalies. Tabers Cyclopedic Medical Dictionary H-46 (9th ed. 1963)
 
 
 [2]
 Fleming argues that but-for her pregnancy and childbirth she would not have been discharged from the Brownsville Manor Nursing Home. It is true that but-for her pregnancy she would not have had her child and there would be no medical costs for that child. However, the but-for test advocated by Fleming is overinclusive and is not the test for legal liability under the Act
 
 
 [3]
 Fleming relies on this Court's statement that "[o]nce discrimination is found, reinstatement should be granted absent exceptional circumstances," In re Lewis, 845 F.2d at 630, to support her claim for reinstatement here. As the Lewis court recognized, the rationale for the policy favoring reinstatement is that money damages alone do not suffice to make the injured person whole in the typical case because there are also intangible benefits associated with having a job. Id. In this case the District Court found that Fleming would not have worked after May 1985 with or without any unlawful discrimination. Thus the rationale for reinstatement is not applicable here. This case is "exceptional," as that term was used in Lewis
 
 
 [4]
 A "specific" explanation is one that is in accordance with the standards set out in Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624, 636-37 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). Walje, 773 F.2d at 733. We note that the Supreme Court in Hensley stated that the district court need not go so far as to identify specific hours which should be eliminated in determining the reduced fee
 
 
 [1]
 It appears from Fleming's brief that she seeks only reinstatement and does not challenge the court's decision with respect to back pay