Charles RUSSELL, Plaintiff,

v.

**NORTHROP GRUMMAN
CORPORATION,**
Defendant.

No. 95 Civ. 1500.

United States District Court,
E.D. New York.

March 29, 1996.

Frank S. Russell, Lite & Russell, West Islip, New York, for Plaintiff.

Anita W. Coupe, Morgan, Lewis & Bockius, New York City, for Defendant.

*Memorandum and Order*

SEYBERT, District Judge:

On April 14, 1995, plaintiff Charles Russell commenced this action alleging a violation of Section 510 of the Employee Retirement Income Security Act ("ERISA") and seeking a judgment (1) awarding compensatory damages for lost benefits and for lost earnings from the date of his dismissal, September 23, 1993, to the day of the entry of judgment; (2) ordering defendant Northrop Grumman Corporation to reinstate plaintiff to his rightful position and to restore retroactively the benefits of plaintiff's employment, including his pension plan; (3) awarding plaintiff costs and reasonable attorneys' fees; and (4) awarding plaintiff any other relief that the Court deems just and proper. This Court has jurisdiction pursuant to ERISA, 29 U.S.C. §§ 1001 *et seq.* and 28 U.S.C. § 1331.

On June 9, 1995, defendant made a motion, currently pending before this Court, to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike plaintiff's demand for back pay. Defendant asserts that plaintiff conclusorily paraphrased a portion of the statute allegedly violated, and thus failed to sufficiently plead specific intent, an essential element of this cause of action. Additionally, defendant contends that damages for lost wages are not recoverable under section 510 of ERISA. Plaintiff, in turn, alleges that the complaint contains a statement of the claim entitling him to relief, and that lost wages are recoverable under ERISA. Oral argu-

ment was heard on the motion on March 25, 1996.

For the reasons set forth below, defendant's motion to dismiss the complaint for failure to state a claim and defendant's motion to strike plaintiff's demand for lost wages are both denied.

### STATEMENT OF FACTS [1]

Plaintiff, a United States citizen and resident of New York, was born on February 16, 1954 and worked for defendant corporation or its predecessor in interest from April 22, 1974 until September 23, 1993, when he was involuntarily terminated at age thirty-nine. During this period of employment which lasted approximately nineteen years and five months, the defendant maintained a pension plan for the benefit of its employees, including plaintiff, which was known as the "Grumman Pension Plan."

Plaintiff alleges that upon the completion of twenty years of service for defendant, he would have become entitled to sixty-five percent (65%) "of pension plan" at age fifty. Plaintiff further alleges that defendant terminated plaintiff's employment to interfere with plaintiff's rights under the Grumman Pension Plan. Finally, plaintiff claims that recourse to the pension plan's internal review procedure would be futile because he was discharged to prevent him from obtaining benefits under the plan.

### DISCUSSION

I. *THE COMPLAINT SUFFICIENTLY SETS FORTH A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED*

Plaintiff's complaint alleging that defendant discharged him for the purpose of interfering with his attainment of entitled rights under defendant's established pension plan, coupled with the alleged fact that this discharge took place approximately seven months prior to the accrual of certain benefits, sufficiently sets forth a claim upon which relief could be granted.

1. These facts are construed in the light most favorable to plaintiff, as is required on a motion

*A. Standards for Granting a 12(b)(6) Motion to Dismiss*

I. *STANDARDS GOVERNING A MOTION TO DISMISS UNDER RULE 12(B)(6)*

A district court should grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); *Annis v. County of Westchester,* 36 F.3d 251, 253 (2d Cir.1994); *Easton v. Sundram,* 947 F.2d 1011, 1014 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.* at 249, 109 S.Ct. at 2906; *see Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.,* 23 F.3d 636, 639 (2d Cir.1994); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed. R.Civ.P. 8(a)(2) to demonstrate liberal system of 'notice pleading' employed by the Federal Rules of Civil Procedure).

The court's duty merely is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir. 1980); *accord Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)

to dismiss.

(plaintiff is not compelled to prove his case at the pleading stage). Additionally, the Rules do not require the claimant to set out in detail the facts upon which he or she bases a claim, but only that he or she gives a statement of his or her claim that will give defendant "fair notice of what [his or her] claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ Therefore, where a complaint is filed that charges each element necessary to recover, dismissal of the case for failure to set out evidential facts can seldom be warranted. *U.S. v. Employing Plasterer's Assoc'n*, 347 U.S. 186, 188–89, 74 S.Ct. 452, 453–54, 98 L.Ed. 618 (1954). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987).

Thus, construing the facts in the light most favorable to plaintiff, in the instant motion to dismiss, the Court must determine whether plaintiff can prove a set of facts entitling him to relief or whether he has merely asserted general legal conclusions unsupported by facts.

B. *Elements Necessary to Set Forth a Claim Alleging a Violation of ERISA*

■ In this case, plaintiff seeks redress for defendant's alleged violation of § 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140. Section 510 of ERISA provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. ...

29 U.S.C. § 1140. This section prohibits two types of employer discrimination. First, an employer is precluded from discriminating against an employee for the purpose of interfering with an employee's exercise of certain rights. *See Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1482 (4th Cir.1996). Second, an employer is not permitted to discriminate against an employee for the purpose of interfering with an employee's attainment of certain rights. *Id.* This case presents the second type of discrimination. In either situation, however, defendant's acts will be prohibited whether or not the interference was successful and regardless of whether the participant would actually have received the benefits absent the interference. *Molina v. Mallah Organization, Inc.*, 804 F.Supp. 504, 512 (S.D.N.Y.1992).

■ Section 510 was enacted primarily to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988). An essential element of plaintiff's proof under the statute is "to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510." *Dister*, 859 F.2d at 1111. Therefore, an ERISA cause of action will not lie " 'where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment.' " *Id.* (quoting *Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983, 985 (S.D.N.Y. 1982), *aff'd*, 742 F.2d 1441 (2d Cir.1983)).

In *Dister*, the Second Circuit addressed the requirements for stating a claim under Section 510 and adopted a burden shifting analysis. *Dister*, 859 F.2d at 1111–15. The Court set forth the following three-step analytical framework for indirect proof of intent:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant, "to articulate some legitimate, nondiscriminatory reason for the employee's rejection...." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defen-

dant were not its true reasons, but were a pretext for discrimination.

*Id.* at 1111 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

　　　At the prima facie stage, the nature of the plaintiff's burden of proof is de minimis. *Dister*, 859 F.2d at 1114. To state a prima facie case of discriminatory discharge for the purposes of section 510, plaintiff must plead (1) that he belonged to a protected group under ERISA, (2) that he was qualified for the pensions, and (3) that he was discharged or denied employment under circumstances which give rise to an inference of discrimination. *Id.* at 1114–15. The timing of the discharge and savings by the employer which resulted "are circumstances sufficient to give rise to an inference of discrimination." *Ehrlich v. Howe*, 1992 WL 373266, *4 (S.D.N.Y.) (quoting *Dister*, 859 F.2d at 1115). Additionally, plaintiff does not have to use magic words indicating intent but only has to use language which gives rise to an inference of intent, an element that can be explored in more detail during the discovery stage of the litigation. *See Roeder v. General Signal Corp.*, 901 F.Supp. 124, 126 (W.D.N.Y.1995) (holding that statement in complaint that defendant "took into consideration" plaintiff's request for pension benefits when firing him was sufficient to support ERISA cause of action prior to discovery stage of proceeding).

C.　*Applying the Standards for a 12(b)(6) Motion to Dismiss and the law governing a ERISA § 510 Action to the Facts in this Case*

Through the construction of an exceedingly liberal standard which a plaintiff must meet to avoid being subject to dismissal for a failure to state a claim, *see Acoustica Associates, Inc. v. Powertron Ultrasonics Corp.*, 28 F.R.D. 16, 18–19 (E.D.N.Y.1961), the drafters of the Federal Rules of Civil Procedure have made the authorization of a summary dismissal infrequently justified. *See U.S. v. Employing Plasterer's Ass'n*, 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954). Pleading is no longer a "game of skill in which one misstep by counsel may be deci-

sive to the outcome." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). It is now accepted that the purpose of pleading is "to facilitate a proper decision on the merits." *Id.* It is in this context which defendant's motion to dismiss must be denied.

　　　To establish a prima facie case alleging a violation of section 510 of ERISA, plaintiff merely has to plead that he or she was qualified for a pension as a beneficiary of a pension plan in which he or she belonged and that the discharge occurred under circumstances giving rise to an inference of discrimination. *Dister*, 859 F.2d at 1114–15. To determine if plaintiff met this burden, the Court must construe all reasonable inferences in his favor, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), as well as accept as true any material facts alleged in the complaint. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). A complaint whereby it is legally feasible that relief could be granted under any set of facts consistent with the allegations will survive a motion to dismiss. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

　　　In our case, plaintiff has charged each element necessary to recover, and thus the Court cannot grant defendant's motion to dismiss. *See Employing Plasterer's Ass'n*, 347 U.S. at 188–89, 74 S.Ct. at 453–54 (holding that dismissal of case for failure to succinctly set forth evidential facts is rarely warranted where the plaintiff sets forth requirements for recovery under claimed cause of action). First, plaintiff alleges that during his nineteen year, five month tenure as an employee for defendant, he was a beneficiary of a pension plan maintained by defendant for all of its employees. Complaint at ¶ 2. Thus, plaintiff is in a protected group. *Dister*, 859 F.2d at 1115 (holding that "because § 510 of ERISA protects those employees who have an opportunity to attain rights in a covered benefit plan ... plaintiff is in a protected group"). Second, plaintiff alleges that he was terminated "for the purpose of interfering with the attainment of [a] right" to which he would have become entitled. Complaint at ¶ 2.

Moreover, in addition to stating that defendant did indeed intend to interfere with his entitlement to sixty-five percent (65%) "of pension plan" at age fifty upon the completion of twenty years of service for defendant, plaintiff pleads the fact that his dismissal occurred after nineteen years and five months of service—only seven months prior to accruing the benefit plaintiff complains was unjustly deprived. The timing of the dismissal, which occurred after plaintiff was employed for ninety-seven percent of the time required to obtain this entitlement to benefits, is sufficient to give rise to an inference of discrimination. *Dister*, 859 F.2d at 1115. *See generally Clapp v. Greene*, 743 F.Supp. 273, 276 (S.D.N.Y.1990) (holding that if only fact plaintiff pleaded concerning defendant's discriminatory intent was stated in conclusory form, plaintiff's complaint would necessarily be dismissed). This detail, combined with plaintiff's other allegations not currently in issue, is adequate to rebut the appearance that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102, and therefore renders the complaint sufficient to withstand defendant's 12(b)(6) motion to dismiss.

Additionally, defendant's heavy reliance on the decision in *Clapp v. Greene*, 743 F.Supp. 273 (S.D.N.Y.1990), is misplaced. In *Clapp*, although plaintiff stated in her complaint that her discharge was for a discriminatory purpose, the thrust of her position was that her alleged denial of benefits came as a consequence, but not cause, of her termination. *Id.* at 276, 276 n. 2; *see Ehrlich v. Howe*, 1992 WL 373266 (S.D.N.Y.). Moreover, the plaintiff in *Clapp* failed to set forth facts that could support an inference of unlawful motivation. *Id.* In contrast, in the present case, plaintiff expressly accuses defendant of firing him *"for the purpose"* of denying him of benefits he would have become entitled to in the near future and alleges facts giving rise to an inference of discrimination. Complaint at ¶ 2 (emphasis added).

Finally, courts have noted that because New York law permits an employer to fire a noncontractual employee at-will, while ERISA restricts that freedom by providing that the employer's intent must not be discriminatory, "the employee is left the very difficult task of proving that he was fired at least partly to avoid the vesting of his pension benefits." *Shipper v. Avon Products, Inc.*, 605 F.Supp. 701, 706 (S.D.N.Y.1985). Because of this arduous undertaking, courts that have denied a defendant's motion to dismiss in similar circumstances have reasoned that the plaintiff is entitled to engage in discovery to gather the evidence required to support his claim in order for the trier of fact to determine whether or not plaintiff was discharged improperly. *See, e.g., Roeder v. General Signal Corp.*, 901 F.Supp. 124, 126 (W.D.N.Y.1995) (denying motion to dismiss and asserting that plaintiff bringing ERISA § 510 suit following his discharge after requesting projected pension figures should be given opportunity to engage in discovery to explore issue of defendant's intent); *Blake v. Bank of New York*, No. 90 Civ. 4202, 1991 WL 51124 (S.D.N.Y.) (denying motion to dismiss and stating that plaintiff alleging constructive discharge due to diminishment of responsibilities should be given opportunity to gather evidence required to support his claim).

Consequently, because plaintiff has sufficiently set forth the requirements necessary to allege a violation under ERISA, defendant's motion to dismiss the complaint for failure to state a cause of action is DENIED.

## II. *PLAINTIFF IS ENTITLED TO SEEK THE REQUESTED LOST WAGES*

■ Defendant's motion to strike plaintiff's request for earnings lost from the date of termination to the date of entry of judgment also must be denied. ERISA's remedial provisions allow for equitable recovery but do not afford monetary damages to a plaintiff who seeks relief. Because the lost wages that plaintiff seeks, together with the requested reinstatement to his prior position, would restore to him that which he was entitled to if not for defendant's alleged illegal conduct, this remedy is equitable in nature and therefore appropriately recoverable under ERISA.

Section 502 is the civil enforcement provision of ERISA. 29 U.S.C. § 1132. In relevant part, section 502(a) provides that a civil action may be brought:

(1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section [409 of ERISA]; [and]

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (I) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan.

29 U.S.C. § 1132 (emphasis added). Section 502(a) is the exclusive remedy for rights guaranteed under ERISA, including those provided by Section 510. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 144, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990). Therefore, to discern whether plaintiff in this case is entitled to the recovery in question, each of these three subsections must be examined.

### A. Recovery Under ERISA § 502(a)(1)(B)

An ERISA Section 502(a)(1)(B) claim is essentially the assertion of a contractual right under an employee benefit plan. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir.1992). To recover under § 502(a)(1)(B), the plaintiff must allege that the defendant has failed to abide by the terms of the plan. *Id.* However, Section 510, the relevant provision under which plaintiff in this case seeks recovery, is not concerned with whether a defendant complied with the contractual terms of an employee benefit plan that the employee has qualified for. *Id.* Instead, Section 510 makes unlawful the interference with a participant's ability to meet these qualifications in the first instance. *Id.*

The Second Circuit has held that ERISA permits suits under § 502(a)(1)(B) to recover benefits solely against the plan as an entity. *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993). Additionally, under this section, the alleged violations must be of the *terms* of the plan to be actionable. *See Iwans v. Aetna Life Insurance Corp.*, 855 F.Supp. 579, 583 n. 5 (D.Conn.1994) (emphasis added). "In order to enforce the terms of a plan under § 502, the participant must first qualify for the benefits under that plan." *Tolle*, 977 F.2d at 1134. Therefore, because plaintiff seeks redress under § 510 for interference with the entitlement to benefits which he had not yet qualified for, plaintiff may not seek recovery pursuant to § 502(a)(1)(B).

### B. Recovery Under ERISA § 502(a)(2)

ERISA § 502(a)(2) provides that a civil action may be brought by a participant or beneficiary of a plan pursuant to § 409. 29 U.S.C. § 1132(a)(2). The fiduciary duties imposed by Section 409, however, run only to the plan, and not to the individual beneficiaries. *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985); *accord, Lee*, 991 F.2d at 1009. A plaintiff who seeks damages on behalf of himself and not on behalf of a plan cannot proceed under ERISA § 502(a)(2). *Massachusetts Mutual*, 473 U.S. at 144, 105 S.Ct. at 3091; *Jordan v. Retirement Committee*, 875 F.Supp. 125, 127 (N.D.N.Y.1995). Therefore, plaintiff will be unable to recover pursuant to § 502(a)(2). Plaintiff, however, does not dispute this finding, *Affirmation in Opposition* at 7, but instead relies heavily on § 502(a)(3) and its "other equitable relief" language as support for his attempt to recover lost wages from his termination to the date of the Court's ultimate judgment. *Id.*

### C. Recovery Under ERISA § 502(a)(3)

Generally, a § 510 claim is made enforceable through section 502(a)(3). *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir.1992). While there is some confusion surrounding the matter, "case law suggests that § 1132(a)(3) allows for individualized relief." *Iwans v. Aetna Life Insurance Corp.*,

855 F.Supp. 579, 584 (D.Conn.1994); *see, e.g., Varity Corp. v. Howe,* —— U.S. ——, ——, 116 S.Ct. 1065, 1074–78, 134 L.Ed.2d 130 (1996) (holding that ERISA authorized lawsuit for individualized relief); *Lee,* 991 F.2d at 1011 (rejecting claim pursuant to § 1132(a)(3) on ground that monetary damages are unavailable, not on ground that there is no individual right to recovery); *Bartucca v. Katy Indus., Inc.,* 668 F.Supp. 111, 113 (D.Conn.1987) (holding that individual suit is not prohibited under § 1132(a)(3)).

In *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Supreme Court held that the text of ERISA leaves no doubt that Congress intended the phrase "other equitable relief", provided for in § 502(a)(3), to include only those types of "relief that were typically available in equity (such as injunction, mandamus, and restitution, *but not compensatory damages* )." *Id.* at 248–49, 113 S.Ct. at 2064–65 (emphasis added); *see Varity Corp.,* —— U.S. at ——, 116 S.Ct. at 1073. Furthermore, the Court refused to read the statute to connote the availability of whatever relief a court of equity would be empowered to provide in the particular case, because doing so "would deprive of all meaning the distinction Congress drew between . . . 'equitable' and 'legal' relief" throughout ERISA. *Id.* at 255–57, 113 S.Ct. at 2069–70. "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979).

■■ Similarly, in *Lee v. Burkhart,* 991 F.2d 1004 (2d Cir.1993), the Second Circuit found that the statute's plain language and legislative history confirmed the view that the phrase "other equitable relief" was not contemplated by Congress to include an award of monetary damages. *Lee,* 991 F.2d at 1011. The statute's "carefully integrated civil enforcement provisions . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Sangeniti v. Mutual of America,* 1990 WL 204190, *2

(S.D.N.Y.); *In re Emhart Corp.,* 706 F.Supp. 153, 156 (D.Conn.1988). It is clear then that a plaintiff who seeks compensatory money damages and not equitable relief "may not proceed under § 502(a)(3)." *Jordan,* 875 F.Supp. at 127; *McManus v. The Gitano Group, Inc.,* 851 F.Supp. 79, 83 n. 5 (E.D.N.Y.1994); *Lee,* 991 F.2d at 1011. Therefore, because any question as to whether compensatory damages could be recovered as "appropriate equitable relief" under § 502(a)(3) appears to have been answered in *Mertens, Iwans v. Aetna Life Insurance Corp.,* 855 F.Supp. 579, 583 n. 5 (D.Conn. 1994), the only remaining issue that this Court must decide is whether the relief of lost wages sought by plaintiff in this case is "legal" or, as plaintiff claims, "akin to specific performance" and, consequently, "equitable" and appropriate. *Affirmation in Opposition* at 9.

1. *Lost Wages: Legal or Equitable Relief?*

■■ The fact that a monetary award is being sought does not necessitate a finding that the requested relief is legal in nature. *Chauffeurs, Teamsters, and Helpers, Local 391 v. Terry,* 494 U.S. 558, 570, 110 S.Ct. 1339, 1347, 108 L.Ed.2d 519 (1990); *see Varity Corp.,* —— U.S. at ——, 116 S.Ct. at 1079 (proclaiming that "in fashioning 'appropriate' equitable relief, [courts should] keep in mind the 'special purpose of employee benefit plans' and [should] reflect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others' ") (citations omitted). For example, "actions for breach of trust, or disgorgement of ill-gotten gains can be heard in equity." *Molina v. Mallah Organization,* 804 F.Supp. 504, 511 (S.D.N.Y. 1992). For damages to be characterized as equitable, however, an exception to the general rule that monetary awards are legal in nature must be found. *Terry,* 494 U.S. at 570, 110 S.Ct. at 1347. First, damages will be considered equitable, not legal, if they are restitutionary in nature. *Id.* See *Mertens,* 508 U.S. at 248–49, 113 S.Ct. at 2064–65 (declaring that "other appropriate equitable relief" recoverable under ERISA § 502(a)(3) includes restitution). In other words, if the damages "restore the status quo and return the amount rightfully belonging to another",

they will be regarded as restitutionary and equitable. *Pickering v. USX, Corp.*, 1995 WL 584372, *34 (D.Utah) (citing *Tull v. U.S.*, 481 U.S. 412, 424, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987)). Furthermore, "a monetary award 'incidental to or intertwined with injunctive relief' may be equitable." *Terry*, 494 U.S. at 571, 110 S.Ct. at 1348 (quoting *Tull*, 481 U.S. at 424, 107 S.Ct. at 1839). Therefore, the question facing the Court is whether an award of lost wages under § 510 would serve to restore plaintiff, if he is ultimately successful in this action, to his original, rightful position as though the alleged unlawful conduct had not occurred, or whether the monetary award is intertwined with injunctive relief, such that the relief sought can be deemed equitable.

In *Chauffeurs Local 391 v. Terry*, the Supreme Court held that employees who seek relief in the form of back pay are entitled to a jury trial. *Terry*, 494 U.S. at 570, 110 S.Ct. at 1347–48. In that case, an action for breach of the duty of fair representation, the Court focused on the nature of the remedy sought and concluded that it possessed no attributes justifying departure from the general rule that money damages constitute legal relief. *Id.* In reaching its decision, however, the Court noted that "damages can be characterized as equitable where they are restitutionary, but rejected the proposition that the relief sought by the employees before it met this test." *Schwartz v. Gregori*, 45 F.3d 1017, 1022 (6th Cir.), (citing *Terry*, 494 U.S. at 570–71, 110 S.Ct. at 1348 ("The backpay ... is not money wrongfully held by the Union, but wages and benefits they would have received from [their employer] had the Union processed the employees' grievances properly. Such relief is not restitutionary.")), *cert. denied*, —— U.S. ——, 116 S.Ct. 77, 133 L.Ed.2d 36 (1995). The Court then distinguished the relief sought in the *Terry* case from the lost wages sought in *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), a case where the Court held that district courts have the equitable power to

award lost wages to compensate employees wrongfully discharged in retaliation for asserting their rights under the Fair Labor Standards Act. *Terry*, 494 U.S. at 571, 110 S.Ct. at 1348. In *Terry*, the Court characterized the back pay at issue in *Mitchell*—as opposed to the lost wages in issue in the case in front of them—as restitutionary as well as incidental to injunctive relief and therefore equitable.[2] *Id.*

While restitution is generally awarded to prevent unjust enrichment to the defendant, this is not required in every case. *Schwartz*, 45 F.3d at 1022. Additionally, it is not necessary that restitution be made in kind, "for a court may restore the plaintiff to the position he formerly occupied 'either by the return of something which he formerly had or by the receipt of its equivalent in money.'" *Id.* (quoting 66 Am.Jur.2d Restitution and Implied Contracts § 1 at 942 (1973)). The courts that have recognized the equitable nature of back pay hold that it constitutes restitution in that it gives plaintiff "the very thing that [he or she] would have received but-for the defendant's illegal action", or that it is incidental to an equitable instatement order. *Hubbard v. Environmental Protection Agency*, 949 F.2d 453, 462 (D.C.Cir. 1991). As was the case in *Mitchell* and *Schwartz v. Gregori*, the back pay at issue in this case would be awarded against plaintiff's employer rather than a third party, and thus would operate to restore to the plaintiff "that to which [he] would have enjoyed but for the employer's [alleged] illegal retaliation." *Schwartz*, 45 F.3d at 1022. In *Schwartz*, the Sixth Circuit held in a case similar to this that the plaintiff could recover back pay under § 502(a)(3) in a § 510 retaliatory discharge case because the award constituted a restitutionary equitable recovery. *Id.* at 1022–23 ("In light of Mitchell, Terry, and, ultimately, Mertens, we conclude that the back pay awarded here constituted restitution, and therefore is an equitable remedy available under § 502(a)(3).").

**2.** Notably, if *Terry* had characterized the back pay in *Mitchell* as equitable solely because it was within the power of a court sitting in equity to award, and had not also characterized it as resti-

tutionary, *Mertens* would preclude a determination· that back pay is equitable in nature and · available under ERISA § 502(a)(3). *Schwartz*, 45 F.3d at 1022 n. 4.

Moreover, with regards to the second situation where an award of lost wages would constitute an equitable remedy, courts in the Second Circuit have held that back pay is incidental to reinstatement, a form of injunctive relief, *see Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir.1985), *modified*, 793 F.2d 457 (2d Cir.1986), and "together they comprise 'a form of restitution, clearly an equitable remedy.'" *Hodges v. Virgin Atlantic Airways, Ltd.*, 714 F.Supp. 75, 77 (S.D.N.Y.1988) (quoting *Travers v. Corning Glass Works*, 76 F.R.D. 431, 434 (S.D.N.Y.1977)); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1063 (2d Cir.1988) (holding that plaintiff could sue under the Fair Labor Standards Act to "obtain a back pay award as an equitable remedy incidental to the injunction"); *see generally Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38 (2d Cir.1996) (while not expressing a view as to whether an award of 50% of contributions or other liquidated damages comes within ERISA's provision for other equitable relief, the Court cited cases authorizing back pay as a form of restitution).

Finally, although not dispositive on the issue, the conclusion that back pay is a remedy typically viewed as equitable finds support in a number of pre-*Mertens* cases. *Pickering*, 1995 WL 584372 at *35; *see, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 893, 108 S.Ct. 2722, 2732, 101 L.Ed.2d 749 (1988) (declaring that equitable action for specific relief may include order providing for reinstatement of employee with back pay); *Fleming v. Ayers & Associates*, 948 F.2d 993, 998 (6th Cir. 1991); *Kross v. Western Electric Co. Inc.*, 701 F.2d 1238, 1244 n. 7 (7th Cir.1983). Therefore, because the lost wages sought would restore plaintiff to the financial position he would have been in had he not been illegally discharged, and because they also are intertwined with the injunctive relief of reinstatement sought by plaintiff, the damages are properly recoverable as equitable relief under ERISA § 502(a)(3).

### CONCLUSION

In accordance with the foregoing, defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted is DENIED. Additionally, defendant's motion to strike plaintiff's demand for lost wages from the date of termination to the date of entry of judgment is DENIED.

SO ORDERED: